WARD *v.* WALKER.

4-7279                                    178 S. W. 2d 62

Opinion delivered February 28, 1944.

*Warner & Warner,* for appellant.

*Bates, Poe & Bates,* for appellee.

HOLT, J.   M. J. Walker, appellee, sued Claude Ward, Sr., appellant, to recover damages in the amount of $10,-

000, for personal injuries alleged to have been sustained October 8, 1942, at about 6 a. m. on the blacktop highway three miles north of Waldron, while riding in a wagon which was struck in the left rear by an automobile operated by O. C. Hise, whom it is alleged was blinded by headlights on appellant's truck.

On motion of appellant, O. C. Hise was made a "third party defendant," as a tortfeasor, pursuant to the provisions of Act 315 of the Acts of 1941.

Appellant's answer consisted of a general denial, pleaded contributory negligence of appellee, and that appellee's injuries, if any, resulted from the negligence of Hise. Hise answered with a general denial, and in a cross-complaint sought damages against appellant. Appellant answered the cross-complaint of Hise with a general denial. There was a jury verdict in favor of appellee, Walker, against appellant, Ward, in the amount of $900, and a separate verdict against O. C. Hise in favor of appellee, Walker, in the amount of $600. Ward alone has appealed.

In the action against appellant, Ward, the trial court submitted but one issue to the jury, and that was the alleged negligent failure of appellant's truck driver to dim the lights of his truck after being signaled to do so by Hise, the driver of the automobile which collided with appellee's wagon. Appellant says: "The only issue relied upon by plaintiff, or submitted to the jury, was the alleged negligent failure of defendant's driver to dim the headlights, and the only questions involved in this case are the legal sufficiency of the evidence and the failure of the lower court to direct a verdict for defendant Ward."

The question presented, therefore, is one of fact, and under our long established rule, unless we can say, as a matter of law, that there is no substantial evidence upon which to base the jury's verdict, it would be our duty to affirm the judgment. The rule is also equally well established that we must weigh the evidence in its most favorable light to appellee and in support of the jury's finding.

The evidence discloses that appellee, Walker, on October 8, 1942, at about 6 a. m., while it was dark, drove his team of mules and wagon on to the east side of highway 71, about three miles north of Waldron. The highway is level, paved with blacktop, 18 feet wide, with black center line, and gravel shoulders about three feet wide. At the point where appellee entered the highway, it is straight for approximately a mile, north and south. After appellee had traveled about 120 yards with the two right wheels of his wagon on the east shoulder, an automobile operated by O. C. Hise, approached from the rear and collided with the left rear of his wagon, injuring appellee. There was a red reflector on the rear of appellee's wagon. Three passengers were riding in the car with Hise. All were en route to Camp Chaffee to work. Hise testified that he did not see appellee's wagon until within about 20 feet of it because of the blinding and glaring headlights of appellant's truck, which truck at the time of the collision was at a point on the west side of the highway about opposite appellee's wagon; that there was not room for him (Hise) to pass between the wagon and the truck and that to avoid colliding with the truck, he put on his brakes and skidded on the dewey, slick pavement into the left rear of the wagon. He was traveling about 27 miles an hour at the time. The testimony of Hise's three passengers tended to corroborate him. Hise further testified that prior to the collision he dimmed his headlights several times to direct the driver of the truck to dim his lights, but that the truck driver did not dim his lights.

Appellant's truck driver, Ford, testified: "Q. Mr. Ford, you stated that you did see the wagon and team before you stopped? A. Yes, sir. Q. How far back up the highway were you from the scene of the accident when you realized there was an object in the road? A. About the time I started to stop. I can't judge the distance. Q. Will you give me the approximate distance? A. Well, I can't do that, because I don't know how far back I was. I judge about 100 feet from where my truck stopped." His truck was on the west side of the pavement, with two wheels about two and one-half feet off the pavement.

"Q. At the time you saw this particular object in the road, did you dim your bright lights? A. I started pulling over on the west side of the shoulder and put on the bright lights. Q. And kept on the bright lights until the collision? A. Yes. . . . Q. I would like to ask again, how far back up the highway was it that you put on your bright lights? A. When I started stopping, approximately 100 feet, from the scene."

We are not prepared to say that the above evidence, along with all the other testimony reflected in the record, does not present a jury question as to whether the failure of appellant's truck driver to dim his lights constituted negligence under the circumstances.

It is common knowledge that motor vehicles may become highly dangerous instrumentalities when not properly, or when negligently, operated. To protect the public generally against the careless and negligent operation of these machines on our highways and streets, legislation has been enacted regulating their lighting equipment and operation. In this connection § 6775 (Pope's Digest) of our own statute provides: "Except as hereinafter provided, the headlamps, or the auxiliary driving lamps, or combination thereof, on motor vehicles shall be so arranged that the driver may select at will between distributions of light projected to different elevations, subject to the following requirements and limitations: (a) There shall be an uppermost distribution of light, or composite beam, so aimed and of such intensity as to reveal persons and vehicles at a distance of at least 350 feet ahead for all conditions of loading. . . (b) There shall be a lower-most distribution of light, or composite beam, so aimed that: . . . 3. In no event shall any of the high intensity of such lowermost distribution of light or composite beam project higher than a level of 42 inches above the level on which the vehicle stands at a distance of 75 feet ahead . . ." and § 6776 (Pope's Digest) provides: "(a) Whenever a motor vehicle is being operated on a roadway or shoulder adjacent thereto during the times specified in § 6761, the driver shall use a distribution of light, or composite beam, directed high enough and of sufficient intensity to reveal persons

and vehicles at a safe distance in advance of the vehicle, subject to the following requirements and limitations. (b) Whenever the driver of a vehicle approaches an oncoming vehicle within 500 feet, such driver shall use a distribution of light of composite beam so aimed that the glaring rays are not projected into the eyes of the oncoming driver, and in no case shall the high intensity portion which is projected to the left of the prolongation of the extreme left side of the vehicle be aimed higher than the center of the lamp from which it comes at a distance of 25 feet ahead, and in no case higher than a level of 42 inches above the level upon which the vehicle stands at a distance of 75 feet ahead.''

It thus appears from the statute an ''uppermost distribution of light,'' or bright lights, and a ''lowermost distribution of light,'' or dimmers, are required.

The failure of appellant's truck driver to dim his lights was not alone and of itself negligence, but as the jury was correctly told by the court, ''such failure, if any, can be considered by you as evidence of negligence of the defendant, Claude Ward, Sr.''

Under all the instructions, about which no complaint is made, the jury found appellant guilty of negligence in failing to dim the lights of the truck in the circumstances here.

Without objection, the court also correctly instructed the jury ''that if an accident occurs from two causes, both of which causes are due to the negligence of different persons, but which two causes together are the proximate cause of the accident or injuries, then all of the persons whose acts proximately contribute to the accident are liable for any injuries resulting from such accident, and the negligence of one furnishes no excuse for the negligence of the other.''

We think the rule announced by this court in the recent case of *England* v. *White*, 202 Ark. 1155, 155 S. W. 2d 576, in which the facts are similar in effect, apply with equal force here. We there said: ''Appellant's driver began 'winking' his lights, and, when appellee's truck was only a short distance away, he turned on his bright lights,

which prevented appellee's driver from seeing the existing condition until it was too late to stop his truck. When he realized the true situation, saw the conditions, he thought he would be unable to drive between the two trucks, so he applied his brakes and his car skidded into the truck of appellant and caused the damage complained of. There was a slow rain falling at the time, the pavement was wet, and there were signs along the road reading 'Slippery when wet.' Under these facts we are unwilling to say that appellee's driver was guilty of negligence as a matter of law. On the contrary, we think the court properly submitted the questions of negligence and contributory negligence to the jury.'' It was held in that case: (Headnotes 5, 6, 7) ''Where appellant's driver stopped his car partially on the pavement opposite a wrecked car, not leaving sufficient space between for appellee's truck to pass and on the approach of appellee's car turned on his bright lights; the court was justified in submitting the question whether appellee's driver was confronted with an emergency. Where appellant's driver stopped his car partially on the pavement opposite another that had been wrecked, leaving insufficient space in between for another vehicle to pass and turned on his bright lights, all of which is prohibited by the laws of Missouri, the dangers of the situation were the creation of appellant's driver. The jury had a right to conclude that, had appellant's truck been on the shoulder instead of on the pavement, as the law of Missouri requires, and had kept his lights dimmed on the approach of appellee, there would have been no occasion for appellee's driver to apply his brakes, thus causing his truck to skid.''

We think the failure of appellant's truck driver to dim the lights of his truck, in the circumstances here, was an act which the jury was warranted in finding proximately contributed to the collision and appellee's injuries and that liability resulted. See *Coca-Cola Bottling Co. v. McAnulty,* 185 Ark. 970, 50 S. W. 2d 577.

We conclude, therefore, as has been indicated, that a case was made for the jury, and finding no error, the judgment is affirmed.